IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| TENNESSEE RIVERKEEPER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. _____ |
| | ) | |
| | ) | JURY DEMAND |
| v. | ) | |
| | ) | |
| ARDAVAN AFRAKHTEH, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

_____

**COMPLAINT**
_____

Plaintiff, Tennessee Riverkeeper, Inc., by and through counsel, states as follows for its Complaint against Defendant, Ardavan Afrakhteh ("Afrakhteh" or "Defendant"):

**I.    NATURE OF THE CASE**

1.    This is a citizen's suit, brought pursuant to the provisions of Section 505(a)(1) of the Federal Water Pollution Control Act ("Clean Water Act" or "CWA", 33 U.S.C § 1251, et seq.), for ongoing violations of the CWA caused by wastewater discharges at the site of the construction of a residential development in Nashville, Davidson County, Tennessee known as "Sky Nashville" ("Sky Nashville" or the "Development").

**II.    PARTIES**

2.    Riverkeeper is a non-profit corporation formed in the State of Alabama and granted authority to operate in Tennessee by the Division of Business Services, State of Tennessee, as a nonprofit foreign corporation. Riverkeeper has approximately 3000 members,

1

and is dedicated to the preservation, protection, and defense of the Tennessee and Cumberland Rivers and their tributaries. Riverkeeper actively supports effective enforcement and implementation of environmental laws, including the CWA, on behalf of and for the benefit of its members.

3. Members of Tennessee Riverkeeper have recreated in, on, or near, or otherwise used and enjoyed, or attempted to use and enjoy, the Cumberland River (and its tributaries) in the past, and they intend to do so in the future. They have a direct and beneficial interest in the continued protection, preservation, and enhancement of the environmental, aesthetic, and recreational values in the Cumberland River and its tributaries. The quality of these waters directly affects the recreational, aesthetic, and environmental interests of certain members of Tennessee Riverkeeper. The recreational, aesthetic, and environmental interests of certain of Tennessee Riverkeeper's members have been, are being, and will be adversely affected by the Defendant's continued violation of the NPDES permit requirements, Tennessee NPDES rules, and the CWA as alleged in this complaint.

4. Defendant's illegal discharges enter what is shown on United States Geological Services topographical maps as an unnamed stream, but historically is correctly named Philips Branch, and is a tributary to the Cumberland River.

5. The violations alleged herein have had a detrimental impact on Tennessee Riverkeeper members' interests because the violations have adversely affected and/or diminished aquatic life and water quality in these waters and have made these waters less suitable for fishing, boating, swimming, wading, walking, observing nature, or relaxing.

6. These members would recreate more in and around these waters but for Defendant's illegal discharges of pollution.

7. The Declaration of Andrew Ostrowsky ("Ostrowsky") is attached hereto as Exhibit A and incorporated by reference herein. Ostrowsky is a member of Tennessee Riverkeeper. He is a resident of Nashville, Tennessee. Ostrowsky owns a business called Pontoon Saloon that provides pleasure motorboat cruises on the Cumberland River. He also owns Lock 1 Marina in Davidson County. He enjoys fishing, boating, canoeing, swimming, water skiing, and swimming in the Cumberland River and surrounding area.

8. Riverkeeper is a "citizen" within the meaning of 33 U.S.C. §§ 1365(g) and 1365(a) and has standing to bring this action.

9. Defendant, Afrakhteh is a citizen and resident of Williamson County, Tennessee, residing at 798 Old Hickory Blvd, Brentwood, TN 37027.

10. Defendant is a "person" within the meaning of 33 U.S.C. §§1362(5) and 1365(a)(1).

### III. JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over the CWA claims set forth in this Complaint by virtue of Section 505(a)(1) of the Federal Water Pollution Control Act, also known as the Clean Water Act, 33 U.S.C. § 1365(a)(1). Subject matter jurisdiction is also proper pursuant to 28 U.S.C. § 1331 (Federal question).

12. Venue is appropriate in the Middle District of Tennessee pursuant to 33 U.S.C. § 1365(c)(1) and because the acts, omissions, and/or violations complained of herein occurred, and continue to occur, within Davidson County of the Middle District of Tennessee.

### IV. NOTICE

13. Tennessee Riverkeeper ("Riverkeeper") has complied with the pre-suit notice provisions of the CWA. Pursuant to 33 U.S.C. § 1365(b)(1)(A), 40 C.F.R. Part 135, Riverkeeper, on April 24, 2023, gave Defendants notice of the violations alleged herein and its intent to sue after the expiration of sixty (60) days ("Notice").

14. At the same time, Riverkeeper mailed a copy of the Notice to the Administrator of the Environmental Protection Agency ("EPA"), the Regional Administrator of Region IV of the EPA, and the Commissioner of the Tennessee Department of Environment and Conservation ("TDEC").

15. Service of Notice on Defendant was by certified mail. More than 60 days, and less than 120 days, have passed since the Notice was served on Defendant and these agencies.

16. The Notice is attached hereto as Exhibit B and incorporated by reference herein.

17. Since Riverkeeper gave notice, the violations complained of have not ceased, and are ongoing.

18. Neither the EPA nor the State of Tennessee has commenced and diligently prosecuted a civil or criminal enforcement action in a court of the United States or a state for the violations.

19. Furthermore, prior to the Notice, neither the EPA nor the State of Tennessee commenced and diligently prosecuted an administrative action under 33 U.S.C. §1319(g), or under a comparable Tennessee law, for the violations alleged herein.

20. Neither the EPA nor the state has issued a final order not subject to further judicial review and the Defendant has not paid a penalty assessed under 33 U.S.C. §1319(g), or under a comparable Tennessee law, for the violations.

4

21.     Riverkeeper will mail, contemporaneously with the filing hereof, a copy of this Complaint to the Administrator of the EPA, the Regional Administrator of EPA Region 4, the Region in which the violations are alleged to have occurred, the Tennessee Department of Environment and Conservation, and the Attorney General of the United States.

## V.     FACTS

22.     Afrakhteh is permitted to discharge stormwater under certain conditions set forth under a General National Pollution Discharge Elimination System ("NPDES") Permit for Stormwater Discharges Associated with Construction Activity (the "Permit").

23.     As described more fully below, Afrakhteh has not taken sufficient steps to treat and contain stormwater runoff from the Development, which are required pursuant to the Permit. Afrakhteh is thus not compliant with the Permit.

24.     Moreover, the Permit only allows treated stormwater to be discharged into Richland Creek.

25.     Defendant is not discharging into Richland Creek.

26.     Instead, Defendant is making illegal discharges into Philips Branch, a tributary of the Cumberland River.

27.     Riverkeeper has documented the illegal pollution on August 20, 2022, December 8, 2022, December 13, 2022, January 3, 2023, March 3, 2023, April 6, 2023, May 20, 2023, June 29, 2023, and July 8, 2023, July 15, 2023, and it continues today.

28.     Defendant is and has been in violation of the law each day it has failed to maintain adequate controls and repairs to the minimal, ineffective stormwater controls it has in place.

## VI.     STATUTORY BACKGROUND

29. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants from a point source into waters of the United States unless the discharge complies with various enumerated sections of the CWA.

30. Among other things, Section 301(a) prohibits such discharges not authorized by, or in violation of the terms of, a National Pollutant Discharge Elimination System permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

31. The State of Tennessee has been delegated the authority to implement the permitting programs of the Act by the EPA, including the NPDES permit program, pursuant to 33 U.S.C. § 1342(b).

32. TDEC is the water pollution control agency for purposes of the Act and has drafted regulations pursuant to that authority implementing the Act's permitting programs within the State of Tennessee.

33. A citizen suit, pursuant to 33 U.S.C. § 1365(a)(1), may be brought for violations of the terms and conditions of NPDES permits. 33 U.S.C. § 1365(f).

VII. **GENERAL ALLEGATIONS**

34. This is an action for declaratory judgment, injunctive relief, civil penalties, and litigation costs, including reasonable attorney's and expert witness fees, to enforce provisions of the CWA, and regulations adopted pursuant to said act.

35. Defendant is in violation of sections 301 and 402 of the CWA (33 U.S.C. §§1311 and 1342) and sections 122.1, *et sec.,* of Title 40 of the Code of Federal Regulations.

36. The CWA prohibits the discharge pollutants to waters of the United States or waters of the state except as authorized by a permit issued pursuant to the National Pollutant Discharge Elimination System.

37. Defendant is subject to strict liability for any violations of its NPDES Permit.

38. As set forth in Count One, below, and in the Notice, Defendant has violated the CWA by constructing a housing development in a manner that discharges pollutants to the waters of the United States and waters of the state in violation of its NPSES Permit, and by failure to design, construct, and operate its stormwater drainage system to avoid the pollution.

39. The violations set forth herein and in the Notice are continuing and ongoing, or are likely to recur, as of the date this Complaint is being filed.

## VIII. **BACKGROUND**

40. The Development is a 4.8-acre single-family residential development located in west Nashville, Davidson County, Tennessee. It is located on a steep hill next to Interstate 40.

41. The Storm Water Pollution Prevention Plan submitted by Defendant describes the Development as consisting of a 123 Residential Unit Development with paved parking, stormwater features, and utilities.

42. Defendant submitted a Notice of Intent ("NOI") to obtain coverage under the General NPDES Permit for Storm Water Discharges Associated with Construction Activity ("Permit").

43. Notice of Coverage ("NOC") was issued by TDEC on February 20, 2019, and given tracking number TNR242761.

44. Afrakhteh is thus subject to a "General NPDES Permit for Discharges of Stormwater

Associated with Construction Activities, Permit No. TNR100000."

45. The Permit authorizes the Permit holder to discharge treated stormwater, subject to stated discharge limitations and monitoring requirements.

46. All discharges must be in accordance with effluent limitations, monitoring requirements, and other conditions set forth in the NPDES Permit.

47. The NOC permits Afrakhteh to discharge treated wastewater into Richland Creek.

48. Discharge from the Development does not go to Richland Creek, which is not in the vicinity of the Development.

49. Rather, the discharge is to an unnamed tributary of the Cumberland River.

50. Afrakhteh has no permit to discharge to the Philips Branch and thus violates and has violated the Clean Water Act every day that he discharges or has discharged pollution to Philips Branch without a permit to do so.

51. By letter of February 20, 2019, TDEC informed Afrakhteh that he failed to identify a contractor on the NOI, and that "You must identify a primary contractor, or contractor otherwise responsible for sediment and erosion controls on the construction site."

52. TDEC asked Afrakhteh to submit a revised NOI "prior to beginning earth clearing operations onsite."

53. To date, Riverkeeper can find no record of Afrakhteh identifying a primary contractor or one responsible for sediment and erosion controls at the Development.

54. Afrakhteh is in violation of the Permit each day he fails to identify a contractor responsible for sediment and erosion controls on the construction site, although in documents

from Davidson County reflect that the erosion control contractor is or was JC Enterprise.

55. The unnamed contractor is also in violation of the Permit, based on its failure to provide adequate erosion controls and wastewater treatment, as discussed below.

IX. **PERMIT/CLEAN/CLEAR WATER ACT VIOLATIONS**

A. **The SWPPP's Sediment Control Designs Do Not Comply with Permit Requirements.**

56. In accordance with the Permit, Afrakhteh created a Stormwater Pollution Prevention Plan (the "SWPPP").

57. Section 1.4.2 of the Permit states that "The SWPPP must be developed, implemented and updated according to the requirements in Part 5 and Section 6.4.1."

58. The SWPPP provides that "Any proposed grading that results in a 3:1 slope is to be stabilized using erosion control matting." (SWPPP, A.1.d.).

59. To Riverkeeper's knowledge, Afrakhteh failed to install any erosion or adequate control matting, in violation of the SWPPP and the Permit.

60. As of August 20, 2022, Afrakhteh had installed no sediment controls whatsoever, despite the fact that it had graded the property and was discharging wastewater from the Development at that time.

61. Afrakhteh was in violation of its Permit between the time he started discharging wastewater and the time he installed any erosion controls, as required by the Permit.

62. Section 5.5.3.5 of the Permit states that "EPSC measures shall be designed to minimize erosion and maximize sediment removal resulting from a 2-year, 24-hour storm (the design storm). The design of erosion prevention and sediment controls must adhere to good

engineering practices."

63. The EPSC measures at the Development were not designed to minimize erosion and maximize sediment removal because it does not minimize erosion and maximize sediment removal resulting from a 2-year, 24-hour storm.

64. Therefore, the design does not adhere to good engineering practices in violation of the Permit.

B. **Failure to Design, Install and Maintain Sediment Controls Appropriate for the Site Conditions.**

65. The Permit requires, "Erosion prevention and sediment control." Permit, § 4.1.1. It states that the permittee is required to:

> Design, install and maintain effective erosion and sediment controls to minimize the discharge of pollutants. At a minimum, such controls must be designed, installed and maintained to:
>
> 1) Control stormwater volume and velocity to minimize soil erosion in order to minimize pollutant discharges;
>
> 2) Control stormwater discharges, including both peak flowrates and total stormwater volume, to minimize channel and streambank erosion and scour in the immediate vicinity of discharge points;
>
> 3) Minimize the amount of soil exposed during construction activity;
>
> 4) Minimize the amount of soil exposed during construction activity;
>
> 5) Minimize sediment discharges from the site. The design, installation and maintenance of erosion and sediment controls must address factors such as the amount, frequency, intensity and duration of precipitation, the range of soil particle sizes expected to be present on the site.

66. Afrakhteh's stormwater control and erosion prevention measures fail to control stormwater volume and velocity and fail to control stormwater discharges, as required by Permit

Section 4.1.1 (1) and (2).

67. For example, during rain events, a portion of the discharge runs underground and under the road and out of an opening in the yard of a neighboring property.

68. Untreated stormwater also leaves the site and goes towards the receiving stream through the street, flooding Delaware Avenue, and preventing cars from passing.

69. Afrakhteh failed to minimize the amount of soil exposed during construction activity, in violation of Permit Section 4.1.1.(5), and instead exposed all the soil on the entire Development in the course of the construction activity.

70. Because the SWPPP for the Development was not designed "to minimize erosion and maximize sediment removal resulting from a 2-year, 24-hour storm," it is not designed "to minimize pollution discharges" or to "[m]inimize sediment discharges from the site," as required by Permit Section 4.1.1 (5).

C. **Failure to Apply Best Practicable Control Technology.**

71. Section 4.1 of the Permit requires "Any point source authorized by this general permit must achieve, at a minimum, the effluent limitations representing the degree of effluent reduction attainable by application of best practicable control technology (BPT) currently available."

72. Afrakhteh is in violation of this Section of the Permit in that the "best practicable control technology" has not been applied.

73. Specifically, for a period of time after grading started on at least August 20, 2022, and perhaps as early as 2018, Afrakhteh was grading while he had no stormwater controls in place.

74. Since then, the only technology that Afrakhteh has utilized is minimal and inadequate controls to prevent sediment runoff and are not the best practicable technology.

75. Thus, Afrakhteh violated this provision of the Permit.

### a. **Erosion Prevention Controls do not Eliminate the Dislodging and Suspension of Soil in Water to the Maximum Extent Practicable.**

76. The Permit further requires that "The erosion prevention controls shall be designed to eliminate to the maximum extent practicable the dislodging and suspension of soil in water. Sediment controls shall be designed to retain mobilized sediment on site to the maximum extent practicable." Permit, § 5.5.3.1(a).

77. It also states that, "All [stormwater] control measures must be properly selected, installed and maintained in accordance with . . . good engineering practices," and that "If periodic inspections or other information indicates a control has been used inappropriately, or incorrectly, the permittee must replace or modify the control."

78. Afrakhteh is in violation of this provision of the permit because, during the entire duration of construction at the Development, the erosion prevention controls at the Development have not been designed to eliminate "to the maximum extent practicable the dislodging and suspension of soil in the water." Permit, § 5.5.3.1(a).

### D. **Failure to Remove Escaped Sediment.**

79. Permit, § 5.5.3.1 (b) states that, "If sediment escapes the permitted area, off-site accumulations that have not reached a stream must be removed at a frequency sufficient to minimize off-site impacts." Permit, § Section 5.5.3.1(c).

80. Afrakhteh is in violation of these provisions of the Permit because he has not

removed sediment that escaped the permitted area "at a frequency sufficient to minimize off-site impacts."

81. This was true on at least August 20, 2022, December 8, 2022, December 13, 2022, January 3, 2023, March 3, 2023, April 6, 2023, May 20, 2023, June 29, 2023, July 8, 2023, and July 15, 2023, and it continues today.

82. In fact, Afrakhteh has not ever made any apparent effort to remove sediment that has escaped from the Development, in violation of this section of the Permit.

E. **The Sediment Basin is Not Designed According to Permit Requirements to Adhere to Good Engineering Practices.**

83. Permit § 5.5.3.5 requires that "The design of erosion prevention and sediment controls must adhere to good engineering practices. The drainage area recommendations and treatment design specifications are provided in the Tennessee Erosion and Sediment Control Handbook."

84. Afrakhteh is in violation of this provision of the Permit and has been on each day since construction began at the Development.

85. If good engineering practices had been utilized, the runoff from the Development would have been contained and/or treated prior to discharge into any permitted receiving stream.

F. **Stormwater is Not Properly Treated.**

86. Permit § 5.5.3.5 also provides that, "Muddy water to be pumped from excavation and work areas must be held in settling basins, filtered or chemically treated prior to its discharge into surface waters. Water must be discharged through a pipe, grassed or lined channel or other equivalent means so that the discharge does not cause erosion and sedimentation. Discharged

13

Case 3:23-cv-00749   Document 1   Filed 07/25/23   Page 13 of 18 PageID #: 13

water must not cause an objectionable color contrast with the receiving stream."

87. Afrakhteh is in violation of this provision of the Permit.

88. Afrakhteh failed to properly treat the stormwater from the Development on August 20, 2022, December 8, 2022, December 13, 2022, January 3, 2023, March 3, 2023, April 6, 2023, May 20, 2023, June 29, 2023, July 8, 2023, and July 15, 2023.

89. Specifically, with each rain event, muddy water is not held in settling basins, filtered, or chemically treated before it is discharged. Instead, muddy water leaves the site with no treatment, and it does not leave the site in a way that does not cause sedimentation.

G. **Discharge Quality and Removal Violates the Permit.**

90. With respect to discharge quality, the Section 6.3.2 of the Permit provides that:

> c) The stormwater discharge must not contain total suspended solids, turbidity, or color in such amounts or character that will result in any objectionable appearance compared to the turbidity or color of the receiving water, considering the nature and location of the water….
> d) Solids or other materials removed by any sediment control treatment devices must be disposed of in a manner that prevents its entrance into or pollution of any surface or subsurface waters.

91. The discharge from the Development is turbid, is an objectionable color, and solids are not removed before discharge to surface waters, in violation of this provision of the Permit.

92. This was true on at least August 20, 2022, June 29, 2023, and July 15, 2023.

H. **Stormwater Discharges Cause Violation of State Water Quality Standard.**

93. The Permit "does not authorize stormwater or other discharges that would cause or contribute to a violation of a state water quality standard…. Such discharges constitute a violation of this permit." Permit, § 6.3.1.

94. The Permit provides as follows:

> Pursuant to T.C.A. § 69-3-115 of The Tennessee Water Quality Control Act of 1977, as amended: a) Any person who violates an effluent standard or limitation or a water quality standard established under this part (T.C.A. § 69-3-101, et. seq.); violates the terms or conditions of this permit; fails to complete a filing requirement; fails to allow or perform an entry, inspection, monitoring or reporting requirement; violates a final determination or order of the board, panel or commissioner; or violates any other provision of this part or any rule or regulation promulgated by the board, is subject to a civil penalty of up to ten thousand dollars ($10,000) per day for each day during which the act or omission continues or occurs. B) Any person unlawfully polluting the waters of the state or violating or failing, neglecting, or refusing to comply with any of the provisions of this part (T.C.A. § 69-3-101, et. seq.) commits a Class C misdemeanor. Each day upon which such violation occurs constitutes a separate offense.

95. Afrakhteh is in violation of effluent standards and water quality standards and in violation of the Permit.

96. This was true on August 20, 2022, and June 29, 2023, and July 15, 2023.

## COUNT ONE
## VIOLATIONS OF AN NPDES PERMIT AND THE CLEAN WATER ACT

97. Riverkeeper hereby repeats, re-alleges, adopts, and incorporates by reference the paragraphs above as if fully set out in this count.

98. Afrakhteh is in violation of the provisions of its NPDES Permit by failing to design, construct, and maintain its stormwater management system in compliance with the requirements of the Permit, as set forth above.

99. The violations are continuing and ongoing and there is a reasonable likelihood that Defendant will continue these or similar violations in the future.

100. These violations have an adverse impact on waters of the United States and waters of the state, specifically an unnamed tributary to the Cumberland River and the

Cumberland River and on the recreational, aesthetic, environmental, and pecuniary interests of Riverkeeper's members in those waterways as set forth above.

101. Defendant should be subject to an enforcement order or injunction ordering it to fully comply with all requirements of its NPDES Permit and the CWA.

102. Defendant should be subject to the assessment of civil penalties for these violations of the CWA pursuant to Section 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365. For the purpose of assessing the maximum penalty for which Defendant is liable, each day that the Defendant is not in compliance with its Permit and each discharge of pollutants in violation of its NPDES Permit and/or without a permit authorizing such discharges constitutes a separate violation of Section 301(a) of the CWA, pursuant to Section 309(d), 33 U.S.C. § 1319(d).

**COUNT TWO**
**INJUNCTIVE RELIEF**

103. Riverkeeper hereby repeats, re-alleges, adopts, and incorporates by reference the paragraphs above as if fully set out in this count.

104. The violations set out herein will continue unless this Court enjoins Defendant from continuing to violate its Permit.

105. These violations have caused irreparable injury to Riverkeeper's members. Riverkeeper has no adequate remedy at law for the injuries caused to its members by Defendant's ongoing violations in that Riverkeeper would be forced to bring repeated and burdensome actions for each new injury to its interests if Defendant's ongoing violations are not enjoined.

106. An injunction will be in the public's interest in this case.

107. Because Defendant is in continuing violation of the law, the equities for an injunction weigh in Riverkeeper's favor.

108. Therefore, Riverkeeper brings this cause of action to enjoin Defendant from engaging in any other affirmative act or conduct which would contribute to further permit violations.

**PRAYER FOR RELIEF**

**WHEREFORE**, Riverkeeper respectfully requests that the Court grant the following relief:

a. Plaintiff Riverkeeper requests the Court render a judgment finding and declaring that Defendant has violated and is in violation of the CWA, 33 U.S.C. §1311(a), and Tennessee NPDES rules;

b. Plaintiff Riverkeeper requests and petitions this Court to enjoin the violations and any and all illegal conduct by Defendant set out and alleged in Count One above and issue an injunction compelling Defendant to remedy the illegal discharges of pollutants into waters of the United States;

c. Plaintiff Riverkeeper requests and petitions this Court to assess a $59,973.00 (fifty-nine thousand, nine hundred seventy-three dollars) civil penalty (*see* 40 CFR § 19) against Defendant for each violation and each day of continuing violation of the CWA for which Defendant is found liable pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a);

d. Plaintiff Riverkeeper seeks to have the Court order Defendant to stop construction until he obtains a lawful individual NPDES permit with concrete monitoring requirements and numeric effluent limits.

e. Plaintiff Riverkeeper requests and petitions this Court for an award of litigation costs, including reasonable attorney's fees and expert fees, as authorized by 33 U.S.C. § 1365(d); and

f. For such other, further or more general relief as this Court may deem appropriate.

Respectfully submitted this the 25th day of July, 2023.

Respectfully submitted,

/s/ Elizabeth A. Alexander
Elizabeth A. Alexander (BPR No. 19273)
Pepper Law, PLC
1801 West End Avenue, Suite 850
Nashville, TN 37203
Telephone: 615-256-4838
balexander@pepperlawplc.com

s/ Mark E. Martin
Mark E. Martin
Alabama Bar No: ASB-9361-A41M
*Admission Requested Pro Hac Vice*
P.O. Box 1486
Oneonta, AL 35121
Telephone: (205) 516-9350
mmartin@markemartin.com

**Attorneys for Plaintiff Tennessee Riverkeeper, Inc.**