# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| TENNESSEE RIVERKEEPER, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:23-CV-00749 |
| | ) | Judge Aleta A. Trauger |
| ARDAVAN AFRAKHTEH., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Ardavan Afrakhteh ("Afrakhteh"), by and through counsel, and pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, hereby respectfully moves this Court to dismiss Tennessee Riverkeeper, Inc.'s ("Riverkeeper") complaint against him for alleged violations of the Clean Water Act. Specifically, the complaint should be dismissed because this Court lacks subject matter jurisdiction to hear this matter and Riverkeeper failed to state a claim upon which relief can be granted.

## INTRODUCTION

Mr. Afrakhteh is named as the sole defendant in this case, brought under the citizen suit provision of the Clean Water Act, 33 U.S.C. § 1365(a) ("CWA" or "Act"). The CWA allows citizens to sue alleged violators, provided they give appropriate and adequate notice, specifically to the alleged violator, the Environmental Protection Agency ("EPA"), and the individual State where the alleged violation occurred. 33 U.S.C. 1365(b). Among other required assertions in the notice, a citizen must allege a specific "effluent standard or limitation" violated by the defendant and the dates of the violations. 40 C.F.R. § 135.3(a). The purpose of the notice is to give the alleged violator the opportunity to come into compliance, thus making the citizen suit unnecessary.

1

In this case, Riverkeeper failed to give appropriate and adequate notice to Mr. Afrakhteh. Even if Riverkeeper's notice had been sufficient, Riverkeeper still could not sustain this suit because it does not have standing. As an association relying on one of its members for standing, Riverkeeper cannot show an injury-in-fact it has suffered due to alleged unlawful discharges to Philips Branch, the waterbody allegedly impacted; that Mr. Afrakhteh through his individual actions caused the alleged injury; or that Mr. Afrakhteh has the ability to redress any unlawful discharges. Mr. Afrakhteh does not currently own the property and has never owned the property. Therefore, this case should be dismissed for lack of subject matter jurisdiction and/or because Riverkeeper has failed to state a claim upon which relief can be granted.

## FACTS[1]

At one time, Hill 33, LLC ("Hill 33") owned a 4.8-acre tract of land in Nashville with plans to grade and develop the property for a residential development known as Sky Nashville. *See* (Mot. to Dismiss, Ex. A, Notice of Intent for General NDPES Permit for Storm Water Discharge for Construction Activities (TNR100000) ("NOI") and Ex. B, March 3, 2022 Special Warranty Deed).[2] Mr. Afrakhteh is identified as an owner/developer in the NOI. (Ex. A, NOI p. 1). Despite Hill 33 submitting the NOI to the Tennessee Department of Environment and Conservation ("TDEC"), Mr. Afrakhteh was named as the permit holder. (Doc. 1, PageID #: 5, Compl. ¶ 22). In March 2022, Hill 33 sold the property to its current owner, BGC Development, LLC ("BGC"). *See* (Special Warranty Deed). BGC submitted a request to TDEC to transfer the permit coverage into its name, along with Mr. Afrakhteh's notice of permit termination. *See* (Mot. to Dismiss Ex. C,

---

[1] Mr. Afrakhteh sets forth relevant and material allegations from Riverkeeper's complaint to provide the necessary framework for his motion to dismiss. As he is required to do under the standard governing a Fed. R. Civ. P. 12(b)(6) motion, Mr. Afrakhteh takes the allegations of Riverkeeper's complaint as true. Outside the posture of a Fed. R. Civ. P. 12(b)(6) motion, however, Mr. Afrakhteh disputes many of the allegations set forth in the complaint.

[2] "NPDES" is the National Pollutant Discharge Elimination System. *See* Mot. to Dismiss Ex. A, NOI p. 2.

2

BCG NOI/Permit Transfer Request and Afrakhteh Notice of Termination).[3] On April 14, 2023, over a year after Hill 33 sold the property, Riverkeeper sent its Notice of Intent to sue Mr. Afrakhteh, Land Development.com LLC, and/or an unnamed contractor participating in the development of Sky Nashville for alleged violations of the Clean Water Act. [Doc. 1-2, PageID #: 20, Notice p. 1].

Riverkeeper addressed its Notice to "Ardavan Afrakhteh, Land Development.com, LLC." [Doc. 1-2, PageID #: 20, Notice p. 1]. Throughout the Notice, Riverkeeper vacillated between the LLC and Land Development.com, Inc., but ultimately alleged that "Land Development" violated effluent and water quality standards by causing the discharge of "pollution into an unnamed tributary that flows into the Cumberland River." (*Id.* PageID #: 21, Notice p. 2). Riverkeeper alleged these violations occurred on five dates over an eight-month period: August 20, 2022, December 8 and 13, 2022, January 3, 2023, and April 6, 2023. (*Id.* PageID #: 20, Notice p. 1).

Riverkeeper also alleged Land Development was otherwise not in compliance with the permit due to, among other things, the alleged failure to maintain appropriate sediment controls, failure to apply best practicable control technology, and because "[t]he discharge from the Development is turbid, an objectionable color, and solids are not removed before discharge to surface waters." (*Id.* at PageID #: 26, Notice p. 7). Riverkeeper alleged all these facts against Land Development and stated that, unless Land Development corrected the violations, it would file suit "seeking the Court to require Land Development to correct these violations, to pay statutory fines, attorneys' fees, and costs." (*Id.* at PageID #: 21, Notice p. 2). Nowhere in its Notice did Riverkeeper indicate Mr. Afrakhteh was responsible for the violations or ask him to correct any violations.

---

[3] Despite BCG's request to transfer permit coverage into its name, there is no publicly available record showing that TDEC has issued permit coverage to BCG.

On July 25, 2023, Riverkeeper filed its complaint in this Court. The complaint named Mr. Afrakhteh personally as the only defendant, claiming he was solely and individually responsible for "ongoing violations" of the CWA. *See* (Doc. 1, PageID #: 1, 15, 16, 17, Compl.¶¶ 1, 98, 99, 102, Prayer for Relief). Significantly, in neither its Notice nor its complaint, did Riverkeeper allege a single theory upon which it bases Mr. Afrakhteh's personal liability. Not once does Riverkeeper state how Mr. Afrakhteh is individually responsible for the alleged violations. Furthermore, *all* of the dates upon which Riverkeeper allegedly observed violations occurred *after* Hill 33 sold the property. Likewise, Riverkeeper offers no facts demonstrating how Mr. Afrakhteh is personally liable when, in its Notice, it claimed Land Development was responsible for the discharges and was required to remedy them.

For standing to sue Mr. Afrakhteh, Riverkeeper relies on a declaration from one of its members, Andrew Ostrowski ("Ostrowski").[4] Mr. Ostrowski states he has "enjoyed recreating in the Cumberland River" by "fishing, boating, canoeing, swimming" and other recreational activities. [Doc. 1-1, PageID #: 19, Ostrowski Decl. ¶¶ 4-5]. He also states that he has a business focused on boat cruises and "[a]ctivation and engagement" in the Cumberland River, and he has "long been concerned about pollution of the waters of Tennessee and particularly about the Cumberland River." (*Id.* at Doc. 1-1, PageID #: 19, Ostrowski Decl. ¶¶ 6-9). Mr. Ostrowski, however, did not state that he enjoyed recreating, was concerned about pollution, or that his interests had been adversely affected in Philips Branch, the unnamed tributary that flows to the Cumberland River.

---

[4] The spelling of Mr. Ostrowski's last name is inconsistent throughout Plaintiff's complaint and Mr. Ostrowski's declaration. Mr. Afrakhteh has used the spelling consistent with the substantive paragraphs of Mr. Ostrowski's declaration and how it is spelled below his signature on that document. *See* (Doc. 1-1, PageID #: 19).

4

In its complaint, and contrary to its Notice, Riverkeeper alleged to have observed pollution on 10 specific dates over an 11-month period. Specifically, Riverkeeper lists August 20, 2022, December 8, 2022, December 13, 2022, January 3, 2023, March 3, 2023, April 6, 2023, May 20, 2023, June 29, 2023, and [sic] July 8, 2023, [and] July 15, 2023. [Doc. 1, PageID #: 5, Compl. ¶ 27]. Riverkeeper claims these "violations are continuing and ongoing and there is a reasonable likelihood that Defendant will continue these or similar violations in the future," despite Mr. Afrakhteh *never*, and certainly not at the time of filing or currently, having any individual ownership of Sky Nashville. (*Id.* at PageID #: 15, Compl.¶ 99; Special Warranty Deed). Riverkeeper seeks relief in the form of an injunction compelling Mr. Afrakhteh to remedy the discharges and a civil penalty assessment of $59,973.00, the maximum allowed under the Clean Water Act, for each violation *and* each day of continuing violation of the Act. (*Id.* at PageID #: 17, Compl. ¶ c).

## LAW AND ARGUMENT

### I.   Standard of Review.

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) provide for the dismissal of a case for a lack of subject matter jurisdiction or if the plaintiff fails to state a claim upon which relief can be granted.[5] Here, Riverkeeper's complaint should be dismissed because Riverkeeper does not have standing, which is reviewed under Fed. R. Civ. P. 12(b)(1), and because it failed to provide adequate pre-suit notice to Mr. Afrakhteh, which should be reviewed under Fed. R. Civ. P. 12(b)(6).

---

[5] Fed. R. Civ. P. 12(b) provides, in pertinent part, "[A] party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction; (2) lack of personal jurisdiction; (3) improper venue; (4) insufficient process; (5) insufficient service of process; (6) failure to state a claim upon which relief can be granted; and (7) failure to join a party under Rule 19."

## A. Standing is reviewed under Rule 12(b)(1) as a question of subject matter jurisdiction.

Challenges to a plaintiff's standing to bring suit is a question of subject matter jurisdiction under Rule 12(b)(1). *Chaness & Simon, P.C. v. Simon*, 241 F.Supp.2d 774, 776 (E.D. Mich. 2003) (quoting *Ward v. Alternative Health Delivery Systems, Inc.*, 261 F.3d 624, 626 (6th Cir. 2001) ("Standing is thought of as a 'jurisdictional' matter, and a plaintiff's lack of standing is said to deprive a court of jurisdiction.") (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89-102 (1998) (statutory standing questions, i.e., whether a particular plaintiff can sue, are jurisdictional questions))). Similarly, a motion to dismiss for mootness must be evaluated as a challenge to subject matter jurisdiction. *KNC Investments, LLC v. Lane's End Stallions, Inc.,* 581 Fed. Appx. 484, 487-89 (6th Cir. 2014) (affirming the district court's dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) after it found that the defendant met its burden to prove the mootness).

A Court should review a motion to dismiss under Rule 12(b)(1) under two standards. *U.S. v. Ritchie,* 15 F.3d 592, 598 (6th Cir. 1994). "A *facial* attack is a challenge to the sufficiency of the pleading itself." *Id.* (emphasis in original). On such a motion, the "court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss." *Ohio Nat. Life Ins. Co. v. U.S.*, 922 F.2d 320, 325 (6th Cir. 1990). "A *factual* attack, on the other hand, [. . .] is a challenge to the factual existence of subject matter jurisdiction." *Ritchie*, 15 F.3d at 598. In reviewing a factual attack, "no presumptive truthfulness applies to the factual allegations." *Id.* Here, Mr. Afrakhteh challenges the sufficiency of Riverkeeper's complaint. Therefore, to the extent this motion relies on Fed. R. Civ. P. 12(b)(1), it falls into the category of a facial attack.

6

**B. Riverkeeper's inadequate pre-suit notice bars its lawsuit and mandates its dismissal under Fed. R. Civ. P. 12(b)(6).**

Recent decisions of the Sixth Circuit Court of Appeals have held that pre-suit notice "is a 'mandatory condition precedent to bringing a citizen suit [under the Clean Water Act].'" *S. Side Quarry v. Louisville & Jefferson Cnty. Metro Sewer Dist.*, 28 F.4th 684, 694 (6th Cir. 2022) (quoting *Cooper v. Toledo Area Sanitary Dist.*, 797 F. Appx 920, 923 (6th Cir. 2019)). The Sixth Circuit has explained that "'the notice requirement is not a mere technical wrinkle of statutory drafting or formality to be waived by the federal courts[.]'" *Id.* (citation omitted). Moreover, where "a plaintiff fails to provide sufficient notice, a district court '*must dismiss the action as barred' under the CWA*." *Id.* (citing *Atl. States Legal Found., Inc. v. United States Musical Instruments, U.S.A.* 61 F.3d 473,478 (6th Cir. 1995); *see also Greene v. Reilly*, 956 F2d. 593, 594 (6th Cir. 1992)) (emphasis added).

District Judge Eli Richardson acknowledged the "mandatory condition precedent" language of those cases and its effect, *i.e.*, dismissals for failure of pre-suit notice are dismissals on the merits, "with prejudice." He also recognized, however, that prior U.S. Supreme Court and Sixth Circuit Court decisions had concluded that such failures were jurisdictional. Thus, to the extent the failure to supply proper pre-suit notice is "jurisdictional" based on a narrow and historical interpretation of that term, a plaintiff's failure to issue proper pre-suit notice should result in a dismissal without prejudice. Dismissal of the complaint, however, is the proper remedy. *Starlink Logistics Inc. v. ACC LLC*, 642 F. Supp. 3d 652, 686-88, n. 23 (M.D. Tenn. Nov. 23, 2022).

Because the Sixth Circuit has stated failure of pre-suit notice is "a mandatory condition precedent" resulting in the action being "barred," Mr. Afrakhteh respectfully moves for dismissal of the plaintiff's case "with prejudice" under Fed. R. Civ. P. 12(b)(6). Nevertheless, the plaintiff's

7

case should be dismissed in any event, even under Fed. R. Civ. P. 12(b)(1), for the reasons set forth in this memorandum and to the extent this Honorable Court concludes that "jurisdictional" should be read to limit the dismissal to "without prejudice."

**C. Materials the Court may consider when ruling on a motion to dismiss.**

When examining a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a Court "primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)). But, as noted by Judge Boggs in *Mediacom Southeast, LLC v. Bell South Telecoms, Inc.* a case reviewing a Fed. R. Civ. P. 12(6)(6) dismissal:

> While "documents 'integral' to the complaint may be relied upon, even if [they are] not attached or incorporated by reference," *Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (internal quotation marks omitted); accord *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152-53 (2d Cir. 2002), "[i]t must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

672 F.3d 396, 400 (6th Cir. 2012).

In *Amini*, the Sixth Circuit observed that "[t]his circuit has further held that documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Amini*, 259, F.3d at 502 (quoting *Weiner v. Klais & Co.,* 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429 431 (7th Cir. 1993) (internal quotations omitted).

**D. The exhibits attached to Mr. Afrakhteh's motion to dismiss were referenced in Riverkeeper's complaint and/or are matters of public record and integral to the complaint.**

Mr. Afrakhteh's motion to dismiss relies on Riverkeeper's Notice, the NOI submitted by Hill 33, the Special Warranty Deed, and TDEC Permit Transfer Documentation ("Permit

8

Transfer") submitted by BGC. Since Riverkeeper attached its Notice as an exhibit to its complaint and separately referenced Hill 33's NOI in its complaint, these documents are integral to its complaint and are appropriately included as part of Mr. Afrakhteh's motion to dismiss. In addition, Mr. Afrakhteh attached the Special Warranty Deed and the Permit Transfer to his motion to dismiss for the Court's consideration. There can be no dispute as to the relevance of the Deed or Permit Transfer to the Riverkeeper's complaint. Although Riverkeeper neither attached nor referenced the Deed or Permit Transfer to its complaint, these materials are matters of public record and go to the heart of Riverkeeper's CWA claims. The Deed and Transfer Documentation thus may be properly considered by the Court when deciding this motion.

## II.    Riverkeeper lacks standing to bring this lawsuit.

Riverkeeper bears the burden to demonstrate it has standing to bring this suit. *Steel Co.*, 523 U.S. at 104. Although Riverkeeper does not, in its complaint, allege that it has associational standing, that is the correct test for standing for an organization such as Riverkeeper. *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977). An organization "has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.*

Here, Riverkeeper relied on a declaration of one of its members, Mr. Ostrowski, to ostensibly show a member would have standing to sue in his own right. In order to demonstrate his own standing, as well as Riverkeeper's, Mr. Ostrowski must have suffered "an injury in fact— a harm suffered by the plaintiff that is "concrete" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Steel Co.*, 523 U.S. at 102-03. Second, there must be "a fairly traceable connection

between the plaintiff's injury and the complained-of conduct of the defendant," i.e., causation. *Id*. Third, there must be redressability—"a likelihood that the requested relief will redress the alleged injury." *Id*. Courts should specifically inquire, "[i]s the injury too abstract, or otherwise not appropriate, to be considered judicially cognizable? Is the line of causation between the illegal conduct and injury too attenuated? Is the prospect of obtaining relief from the injury as a result of a favorable ruling too speculative?" *American Civil Liberties Union of Tennessee v. Darnell*, 195 S.W.3d 612, 620-621 (Tenn. 2006). Mr. Ostrowski, and therefore Riverkeeper, fail to meet all three prongs of the test to establish standing.

### A. Neither Riverkeeper nor its member can show an injury in fact.

Mr. Ostrowski states he enjoys "fishing, boating, canoeing, swimming," and other recreational activities in or on the Cumberland River, and that he owns a river boat tour business. [Doc. 1, PageID #: 3, Compl. ¶ 5-6]. He states that he has "specifically been concerned about the increase in irresponsible development in Nashville causing pollution to the Cumberland River." [Doc. 1-1, PageID #: 19, Ostrowski Decl. ¶ 10]. Mr. Ostrowski does not state, however, that he has any interest, concern, or that he conducts recreational activities in *Philips Branch*, which is the waterbody Riverkeeper alleges is impacted by unlawful discharges. *See* [Doc. 1-2, PageID #: 20, Notice, p. 1] ("the pollution coming from the Development into an unnamed tributary that flows into the Cumberland River"), *Id.* at Doc. 1-2, PageID #: 22, Notice p. 3 ("the discharge is to an unnamed tributary of the Cumberland River"), and [Doc. 1, PageID #: 2, Compl ¶ 4] ("Defendant's illegal discharges enter…an unnamed stream, but historically is correctly named Philips Branch, and is a tributary to the Cumberland River"). Nowhere in its Notice does Riverkeeper allege that Mr. Afrakhteh, through his individual actions, has caused pollution to the Cumberland River.

Therefore, Mr. Ostrowski – and by extension, Riverkeeper – cannot show an injury in fact and lacks standing to bring this suit.

**B. Neither Riverkeeper nor its member can show causation between the alleged injury and the alleged conduct.**

In considering whether a defendant's actions caused an alleged injury, the Court should consider whether "the line of causation between the illegal conduct and injury [is] too attenuated." *Darnell*, 195 S.W.3d at 621. Riverkeeper fails to allege, in its Notice, how Mr. Afrakhteh, through his individual conduct or actions, caused the alleged unlawful discharges into Philips Branch. Indeed, the Notice claims Land Development is responsible for the discharges. Furthermore, Riverkeeper fails to allege how Mr. Afrakhteh could cause such violations when he did not own the property during *any* of the dates of alleged discharge observations. Therefore, Riverkeeper lacks standing to bring this suit because it cannot show a line between the unlawful conduct and the alleged discharges.

**C. Neither Riverkeeper nor its member can show redressability.**

For the final element of standing, Riverkeeper must demonstrate "that the alleged injury is capable of being redressed by a favorable decision of the court." (*Id.* at 620). In other words, a showing that its requested relief—essentially, injunctive relief, civil penalties, and attorneys' fees—will redress the alleged injury of unlawful discharges to Philips Branch. Riverkeeper "must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 185 (2000) (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 109 ("[N]otwithstanding the fact that plaintiff had standing to pursue damages, he lacked standing to pursue injunctive relief")). Riverkeeper fails to do so because there is no injunctive relief that Mr. Afrakhteh can provide, a Court cannot assess penalties for wholly past violations, and Riverkeeper is not a "prevailing party" under the CWA.

1. <u>Riverkeeper cannot show that Mr. Afrakhteh can provide its requested injunctive relief.</u>

Riverkeeper requests specifically that the Court "issue an injunction compelling Defendant to remedy the illegal discharges of pollutants into waters of the United States." [Doc. 1, PageID #: 17, Compl. ¶ b]. Mr. Afrakhteh simply has no ability to provide this remedy. The property is currently owned by BGC Development, LLC, and has been since before any of the alleged violations occurred.

Similarly misplaced is Riverkeeper's request that the Court "order Defendant to stop construction until he obtains a lawful individual NPDES permit." *Id.* Mr. Afrakhteh cannot take any action pertaining to construction or have any grounds for obtaining a permit. All of those responsibilities fall to the current owner.

2. <u>Riverkeeper cannot show that Mr. Afrakhteh is subject to civil penalties for wholly past violations.</u>

When a plaintiff "lack[s] standing to seek civil penalties[,]… the asserted defect is not injury but redressability." *Laidlaw*, 528 U.S. at 185. In order to establish standing, a plaintiff must allege *ongoing* violations, not violations occurring wholly in the past. *Id.* at 187; s*ee also Steel Co.*, 523 U.S. 83. Riverkeeper bears the burden to demonstrate that "if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the 'threatened injury [is] certainly impending.'" *Id.* at 175 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

In *Steel Co.*, the Supreme Court, analyzing civil penalties under the EPCRA[6] as a basis for standing, found that "the civil penalties authorized by statute…might be viewed as a sort of compensation or redress to respondent if they were payable to the respondent. But they are not.

---

[6] The Emergency Planning and Community Right-To-Know Act. *See Steel Co.,* 523 U.S. at 83.

12

These penalties…are payable to the United States Treasury." 523 U.S. at 106. The Court goes on to say, "[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Id.* at 107.

The Court elaborates on this point in *Laidlaw* when it analyzed statutorily authorized penalties under the CWA, also payable to the U.S. Treasury. 528 U.S. at 175. It acknowledges the holding in *Steel Co.* "that citizen suitors lack standing to seek civil penalties for violations that have abated by the time of suit." *Laidlaw*, 528 U.S. at 187. *See also Gwaltney*, 484 U.S. 49, 59 (1987) ("the harm sought to be addressed by the citizen suit lies in the present or the future, but not in the past"). To emphasize this point, the Court explains the importance of the deterrent effect of civil penalties: to discourage violators to continue "current violations and deter them from committing future ones, [and] they afford redress to citizen plaintiffs who are injured or threatened with injury as a consequence of ongoing unlawful conduct." (*Id.* at 186).

In its complaint, Riverkeeper asks the Court for a $59,973 civil penalty assessment "against Defendant for each violation and each day of continuing violation of the CWA for which Defendant is found liable." [Doc. 1, PageID #:7, Compl. ¶ c]. Under the Act, these penalties are payable only to the United States Treasury. 33. U.S.C. § 1365(a). Therefore, under the *Steel Co.* test alone, Riverkeeper fails to establish redressability. However, Riverkeeper fails to establish standing under *Laidlaw,* as well.

Riverkeeper bases its extreme penalty amount (the maximum allowed under the CWA) on its alleged observances of discharges on the dates in its Notice—August 20, 2022, December 8 and 13, 2022, January 3, 2023, and April 6, 2023—and the additional dates in its complaint: March 3, 2023, May 20, 2023, June 29, 2023, July 8, 2023, and July 15, 2023. It also alleges that the discharges "continue today." However, *all* of these specific alleged discharges occurred *after* Hill

13

33 sold the property to BGC. And, in its Notice, Riverkeeper wholly fails to allege facts showing how Mr. Afrakhteh is liable for violations occurring during BGC's ownership of the site or otherwise. Furthermore, Riverkeeper cannot show that Mr. Afrakhteh is responsible for any "ongoing violations" when he does not own nor has ever owned the site. Finally, the additional reasoning behind civil penalties articulated by the *Laidlaw* court—deterrence—is not present here. Mr. Afrakhteh has no future or current interest in the site; therefore, there are no "future violations" to deter.

### 3. Riverkeeper is not entitled to litigation costs, including attorneys' fees and expert fees, nor do litigation costs establish redressability.

Lastly, and as a threshold matter, Riverkeeper cannot recover attorneys' or expert fees because it is not a "prevailing party" under the CWA. 33 U.S.C. § 1365(d).[7] Furthermore, litigation costs are "insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Steel Co.*, 523 U.S. at 107. "[A] plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit. The litigation must give the plaintiff some other benefit besides reimbursement of costs that are a byproduct of the litigation itself." *Steel Co.*, 523 U.S. at 107. Therefore, Riverkeeper fails to establish redressability and, by extension, standing based on litigation costs.

## III. This case must be dismissed for lack of subject matter jurisdiction because it is moot.

Even if the Court found that Riverkeeper had standing, this case still should be dismissed because it is moot. Mootness is triggered "if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Laidlaw,* 528 U.S. at 189 (quoting *United States v. Concentrated Phosphate Export Association*, 393 U.S. 199, 203 (1968)).

---

[7] 33 U.S.C. § 1365(d) provides, in pertinent part, "The court, in issuing any final order in any action brought pursuant to this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate."

14

Similarly, "[i]f 'events occur[ing] during the pendency of a litigation which render the court unable to grant the requested relief,' the case becomes moot and thus falls outside [the court's] jurisdiction." *StarLink,* 642 F. Supp. 3d at 697 (quoting *Demis v. Sniezek*, 558 F.3d 508, 512 (6th Cir. 2009)).

Here, Mr. Afrakhteh does not own the property and has requested to terminate his permit. He has no control over the site. Therefore, the alleged unlawful discharges cannot reasonably be expected to occur under his watch. Moreover, this Court cannot grant the requested injunctive relief of ordering Mr. Afrakhteh to discontinue any unlawful discharges because he does not own or control the property.

**IV.    Riverkeeper provided inadequate notice and therefore this action is barred under the CWA and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).**

In order for a citizen to bring suit for alleged violations of the CWA, that citizen is required to provide notice of its intent to sue 60 days in advance of filing a suit. 33 U.S.C. § 1365(a). The notice must include specific and detailed information, including "sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, [and] the date or dates of such violation." 40 C.F.R. § 135.3.  The Sixth Circuit "requires strict compliance with notice requirements." *Stephens v. Koch Foods, LLC,* 667 F.Supp.2d 768, 786 (E.D. Tenn. 2009).

As discussed above, fully meeting this "pre-suit notice requirement is a mandatory condition precedent to bringing a citizen suit." *S. Side Quarry*, 28 F.4th at 694 (quoting *Cooper v. Toledo Area Sanitary Dist.*, 797 F. Appx 920, 926 (6th Cir. 2019) (internal quotations omitted)). Failure to satisfy the notice requirement must result in dismissal of the suit "as barred under the CWA." *Id.* (quoting *Atl. States Legal Found., Inc., v. United Musical Instruments*, 61 F.3d 473,

15

478 (6th Cir. 1995) (internal quotations omitted)). In its Notice, Riverkeeper failed to provide adequate notice because it did not adhere to the specificity standard.

**A. Riverkeeper failed to give adequate notice because it did not put Mr. Afrakhteh on notice of its intent to sue him individually nor allege any theory of personal liability under which he could be held responsible for the alleged violations.**

Throughout its Notice, Riverkeeper names Land Development.com, LLC, or Land Development.com, Inc., as the alleged violator of the Act. Except to put his name at the top of the address block and in its opening sentence claim an intent to file a lawsuit against him and Land Development, Riverkeeper does not mention Mr. Afrakhteh at all. It alleges, in conclusion of its Notice, "Land Development is in violation of the effluent standards and water quality standards and in violation of the Permit and is therefore subject to these penalties in addition to penalties under the Clean Water Act." [Doc. 1-2, PageID #: 26, Notice p. 7]. It even asks Land Development to take action:

> Therefore, Riverkeeper provides this notice pursuant to the citizens suit provisions of the Clean Water Act, 33 U.S.C. § 1368(a)(1) and (b)(1)(A), that *unless Land Development corrects the violations arising from the operation of the Development within the next sixty (60) days, Riverkeeper will file suit in the United States District Court for the Middle District of Tennessee, seeking to have the Court require Land Development to correct these violations, pay statutory fines, attorneys' fees, and costs.*

> [. . .]

> Riverkeeper requests that *Land Development* take immediate action to remedy the significant and ongoing violations of law identified in this letter. If *Land Development* fails to do so, Riverkeeper will file suit sixty days after the date of this letter to remedy these violations.

*Id.* At PageID #: 21, 27, Notice pp. 2, 8 (emphasis added).

In addition to lacking clarity as to which entity—the LLC or the corporation—it intends to sue, Riverkeeper does not allege a single fact in its Notice regarding Mr. Afrakhteh's personal

16

liability. When it filed its complaint, it abandoned Land Development as a defendant and named Mr. Afrakhteh solely and personally.

Courts acknowledge "a presumption that a corporation is a distinct legal entity, wholly separate and apart from its shareholders, officers, directors, or affiliated corporations." *Edmunds v. Delta Partners, L.L.C.*, 403 S.W.3d 812, 828 (Tenn. Ct. App. 2012). Only "[i]n an appropriate case [will] the separate identity of a corporation…be discarded and the individual…treated as identical to the corporation." *Id*. "Thus, the question of whether an individual should be held liable for corporate obligations is largely a factual one." *Id*. (quoting *Muroll Gesellschaft v. Tennessee Tape, Inc.*, 908 S.W.2d, 211, 213 ("Each case involving disregard of the corporate entity must rest upon its special facts")).

Courts also "are cautioned that the doctrine of piercing the corporate veil should be applied only in extreme circumstances to prevent the use of a corporate entity to defraud or perform illegal acts." (*Id*. at 829) (quoting *Pamperin v. Streamline Mfg., Inc*., 276 S.W.3d 428, 437 (Tenn. Ct. App. 2008). When assessing the specific facts alleged for personal liability, "general allegations of supervisory authority or of a corporate office held do not suffice to state personal liability." *Barmet Aluminum Corp. v. Doug Brantley & Sons, Inc.*, 914 F.Supp. 159, 164 (W. D. Ky. 1995). The *Barmet* Court reviewed *Cash Energy, Inc. v. Weiner*, 768 F.Supp. 892, 896 (D. Mass. 1991), where an action was dismissed because the "plaintiff failed to give fair notice of a legal theory under which the action would proceed." (*Id*. at 165). The *Barmet* Court was analyzing personal liability under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), an environmental statute similar to the CWA. Finally, the Seventh Circuit has found that "to survive a motion to dismiss, the pleading must allege that persons associated with the corporation *directly* and *personally* engaged in conduct that led to the specific environmental

damages at issue in the case." (*Id.* at 165 (*quoting Sidney S. Arst Co. v. Pipefitters Welfare Education Fund*, 25 F.3d 417 (7th Cir. 1994)).

Riverkeeper's Notice is utterly devoid of any facts alleging Mr. Afrakhteh's personal liability. Not only does it wholly fail to state *any* facts, it fails to show the specificity required in alleging Mr. Afrakhteh's direct and personal engagement in any conduct leading to the supposed unlawful discharges to Philips Branch. Given the complete absence of any facts to show the Mr. Afrakhteh could possibly be individually responsible, the pre-suit notice is grossly inadequate and Riverkeeper's complaint must be dismissed for failure to state a claim and as barred under the CWA.

### B. Riverkeeper's Notice failed to provide sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated.

In order to fulfill the notice requirement, a plaintiff "*must allege* a violation of an 'effluent standard or limitation.'" *S. Side Quarry,* 28 F.4th at 690 (emphasis added). Riverkeeper alleges Land Development violated the permit in various ways. Riverkeeper alleges "Land Development is in violation of effluent standards and water quality standards and in violation of the Permit and is therefore subject to these penalties in addition to penalties under the" CWA. [Doc. 1-2, PageID #: 26, Notice p. 7]. Riverkeeper, however, failed to show how Mr. Afrakhteh personally violated any specific effluent standard or limitation. Furthermore, without any notice as to which effluent standard he has violated, Mr. Afrakhteh is unable to identify a violation he is supposed to remedy.

### C. Riverkeeper failed to identify all the dates of the alleged violations in its 60-day notice.

In it Notice, Riverkeeper identifies five dates of alleged violations: August 20, 2022, December 8 and 13, 2022, January 3, 2023, and April 6, 2023. In its complaint, however, it adds five more: March 3, 2023, May 20, 2023, June 29, 2023, July 8, 2023, and July 15, 2023. One of those

18

additional dates, March 3, 2023, occurred prior to the April 14, 2023 issuance of the Notice, but was not included in the Notice. The other four occur after the Notice.

In *Stephens v. Koch Foods*, the District Court for the Eastern District of Tennessee found insufficient notice had been given to dates included in a complaint, but not contained in the pre-suit notice. 667 F.Supp.2d at 786. "As to the alleged effluent violations after…the date of the notice letter, no notice has been given to those alleged violations." *Id.* The Court also found that merely alleging "continuing" violations was not enough to render the notice adequate. "Merely alleging that a violation is "continuing" is not sufficient notice." (*Id.* at 787 (citing *Nat'l Parks Conservation Ass'n, Inc. v. Tenn. Valley Auth.*, 175 F.Supp.2d 1071, 1077 (E.D. Tenn. 2001) (holding that notice was not specific to meet jurisdictional requirements when notice merely states that a defendant "regularly violated" the standard "for at least five years")). The Court held that it did not have jurisdiction to hear those claims relating to dates not included in the Notice. *Id.* (citing *Atl. States Legal Found. v. United Musical Instruments, U.S.A.*, 61 F.3d 473, 478 (6th Cir. 1995) (holding that jurisdictional notice requirements not met as to those occurring in 1991 when notice alleged violations from 1987-1990 and complaint listed 1988-1991).

## CONCLUSION

Riverkeeper's complaint should be dismissed under Fed. R. Civ. P. 12(b)(1). This case should also be dismissed under Fed. R. Civ. P. 12(b)(6). Riverkeeper provided inadequate pre-suit notice to Mr. Afrakhteh because it failed to adhere to the specificity standard as to the person responsible for the violations and dates of the alleged violations Significantly, Riverkeeper's Notice provides absolutely no basis whatsoever for Mr. Afrakhteh's personal liability. A case must be dismissed as barred under the CWA where inadequate notice has been provided. Therefore, Mr. Afrakhteh respectfully requests this Court dismiss Riverkeeper's complaint with prejudice.

19

Riverkeeper also lacks standing to bring this suit because it cannot show it suffered an injury, that Mr. Afrakhteh personally caused that injury, or that the alleged injury can be redressed. Alternatively, the case must be dismissed because it is moot. For both reasons, the Court lacks subject matter jurisdiction and the case should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

Respectfully submitted this 9th day of October, 2023.

ARNETT, BAKER, DRAPER & HAGOOD, LLP

By:   /s/Jay W. Mader
       Jay W. Mader, BPR #016199
       Paul E. Wehmeier, BPR #030400
       800 S. Gay Street  2300
       First Horizon Plaza
       Knoxville, TN 37901-0300
       (865) 546-7000
       jmader@arnettbaker.com
       pwehmeier@arnettbaker.com

    -and-


BUTLER SNOW LLP

By:   /s/ B. Hart Knight
       J.W. Luna, BPR #5780
       B. Hart Knight, BPR #025508
       Katherine Barnes, BPR #03245 *(application pending to the United States District Court for the Middle District of Tennessee)*
       The Pinnacle at Symphony Place
       150 Third Avenue South, Suite 1600
       Nashville, TN 37201
       (615) 651-6700
       J.W.Luna@butlersnow.com
       Hart.Knight@butlersnow.com
       Katherine.Barnes@butlersnow.com

*Attorneys for Defendant Ardavan Afrakhteh*

20

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and exact copy of this pleading or document has been filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's electronic filing system.

This 9th day of October, 2023.

ARNETT, BAKER, DRAPER & HAGOOD, LLP


By: /s/Jay W. Mader
    Jay W. Mader

21